**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TIMBER HILL LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE KRAFT HEINZ COMPANY, BERNARDO HEES, PAULO BASILIO, DAVID H. KNOPF, GEORGE EL-ZOGHBI, CHRISTOPHER R. SKINGER, VINCE GARLATI, ALEX BEHRING and 3G CAPITAL INC.,<br><br>        Defendants. | CASE NO.<br><br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**Table of Contents**

I.   INTRODUCTION ............................................................................................................... 1

II.  JURISDICTION AND VENUE ...................................................................................... 7

III. PARTIES ......................................................................................................................... 7

IV. SUBSTANTIVE ALLEGATIONS ................................................................................ 9

    A.  The Formation of The Kraft Heinz Company .................................................... 9

    B.  Defendants Mislead The Market About the Results of The Cost Cutting Strategy .......... 12

    C.  Defendants Mislead Investors About the Value of the Kraft Heinz Brand ...................... 13

    D.  3G Capital Reaps Enormous Profits by Selling Shares of Kraft Heinz Stock While in Possession of Material Nonpublic Information ................................................ 14

VI.  FALSE AND MISLEADING STATEMENTS ................................................................ 19

    A.  Kraft Heinz's Class Period SEC Filings Were Materially False and Misleading and Omitted Material Facts in Violation of SEC Disclosure Regulations ............................. 19

    B.  Additional False and Misleading Statements During the Class Period .......................... 22

V.   ADDITIONAL SCIENTER ALLEGATIONS ................................................................ 26

VI.  CLASS ACTION ALLEGATIONS ................................................................................ 28

VII.  LOSS CAUSATION ....................................................................................................... 30

VIII. APPLICABILITY OF FRAUD-ON-THE-MARKET DOCTRINE .................................. 31

IX.  PRESUMPTION OF RELIANCE .................................................................................... 32

X.   INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ................................................................................................... 33

XI.  CLAIMS FOR RELIEF ................................................................................................... 34

    COUNT I ......................................................................................................................... 34

    COUNT II ........................................................................................................................ 36

    COUNT III ....................................................................................................................... 36

PRAYER FOR RELIEF ......................................................................................................... 39

JURY TRIAL DEMAND ............................................................................................................. 39

Plaintiff Timber Hill LLC ("Plaintiff"), by and through its undersigned counsel, brings this action on behalf of itself and all other similarly situated investors that purchased Kraft Heinz Company ("Kraft Heinz" or the "Company") common stock, purchased call options on Kraft Heinz common stock, sold put options on Kraft Heinz common stock and/or purchased futures on Kraft Heinz common stock during the period July 6, 2015 through February 21, 2019, inclusive (the "Class Period"), pursuant to Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) 78t(a) and § 78t–1, respectively, and the rules and regulations promulgated thereunder, including United States Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 (collectively, such investors are referred to herein as the "Class"). This action is brought against Kraft Heinz, certain current and former senior executives and directors of the Company, as well as Brazilian private equity firm and Kraft Heinz insider 3G Capital Inc. ("3G Capital") (collectively, "Defendants").

Except as to allegations specifically pertaining to Plaintiff, all allegations herein are based on the investigation conducted by and through Plaintiff's counsel, which included, among other things, a review of Kraft Heinz's filings with the SEC, as well as press releases, investor presentations, earnings calls and analyst and media reports about the Company.

Plaintiff's Counsel's investigation into the factual allegations continues, and many of the relevant facts are known only by Defendants or are exclusively within their custody or control. Plaintiff believes that substantial additional evidentiary support is likely to exist for the allegations set forth herein after a reasonable opportunity for further investigation or discovery.

## I. INTRODUCTION

1. This action arises from Kraft Heinz's February 21, 2019 announcements that it: (i) would be taking a ***$15.4 billion goodwill impairment*** write-down primarily relating to its Kraft

and Oscar Mayer brands; (ii) had received an SEC subpoena related to an investigation into the Company's accounting and controls; and (iii) was cutting its quarterly dividend from $0.625 cents per share to $0.40 cents per share. The Company further announced it would be delaying the filing of its annual report on Form 10-K for fiscal year 2018. Together, these disclosures caused the price of Kraft Heinz's common stock to drop significantly – from $48.18 per share on February 21, 2019 to $34.95 per share on February 22, 2019 – erasing more than $*16 billion* in market capitalization.

2.      Just months prior to the February 21, 2019 disclosures, Kraft Heinz shareholder, Defendant 3G Capital, which was in knowing possession of material, nonpublic information concerning both the write-down and its attendant effect on Kraft Heinz's business given its partners' high-level positions in Kraft Heinz's management and board of directors – reaped enormous profits through its sale of *20.6 million* shares of Kraft Heinz common stock when it was trading at approximately $59 per share – a far cry from the post-disclosure price of $34.95 per share on February 22, 2019. Collectively, 3G Capital received approximately $*1.232 billion* in illicit proceeds from its sale of Kraft Heinz common stock, avoiding millions of dollars in losses.

3.      The action is brought, in part, pursuant to Section 20A of the Exchange Act on behalf of investors that purchased Kraft Heinz common stock, purchased call options or futures on Kraft Heinz's common stock and/or sold put options on Kraft Heinz common stock contemporaneously with 3G Capital's illicit stock sale. The action is also brought pursuant to Sections 10(b) and 20(a) of the Exchange Act on behalf of all purchasers of Kraft Heinz common stock, purchasers of call options or futures on Kraft Heinz common stock and/or sellers of options on Kraft Heinz common stock from July 6, 2015 through and including February 21, 2018. During this time, which begins at the closing of the merger (the "Merger") of Kraft Foods Inc. ("Kraft")

and The H.J. Heinz Company ("Heinz"), Defendants made materially false and misleading statements and omissions of material facts regarding the Company's value and business prospects.

4.     Specifically, since the Merger, the Company has touted that the combination of the two food giants would result in "an estimated $1.5 billion in annual cost savings from the increased scale of the new organization, the sharing of best practices and cost reductions by the end of 2017." In the years since the closing of the Merger, the Company has also continued to advertise its cost cutting initiatives while simultaneously indicating that it intends to grow its overall revenue numbers through product innovations.

5.     Despite these ongoing representations that Kraft Heinz's business was improving, the Company began to reveal deteriorating financial results in 2018.  For example, on February 6, 2018, Nielsen released data showing a 4-7% volume decline in Kraft Heinz's top-3 categories (cheese, meat and coffee).  Additional data showed that sales of one of the Company's leading brands, Planters Nuts, fell approximately 15%.  As a result of this disclosure, the Company's common stock price fell $2.73 per share over the next two days, from a close of $74.31 per share on February 6, 2018 to a close of $71.58 per share on February 8, 2018.

6.     The truth about Kraft's business and prospects was further revealed on February 16, 2018 when Kraft Heinz announced its 2017 financial results.  The Company reported a year-over-year decline in sales of approximately 1.1%, driven by weak sales of nuts and cold cuts. Defendant Hees commented on the related earnings call that "there is no question that our financial results in 2017 did not meet our potential."  On this news, Kraft Heinz's share price dropped $4.02 per share or approximately 5.5% over the next two trading days, from a close of $72.71 per share on Thursday, February 15, 2018, to a close of $68.69 per share on Monday, February 20, 2018.

7.      On November 1, 2018 – just three months after Defendant 3G Capital's sale of over 20 million shares of Kraft Heinz common stock – additional corrective news was disclosed when the Company released its third quarter financial results, missing consensus estimates for its earnings per share ("EPS") by 4% and missing estimates for its earnings before interest, tax, depreciation and amortization ("EBITDA") by 7% (approximately $100 million).  In reaction to the news, the price of Kraft Heinz's common stock fell $5.47 per share, or 9.7%, from a close of $56.20 per share on November 1, 2018, to a close of $50.73 per share on November 2, 2018.

8.      On Kraft Heinz's third quarter 2018 earnings call, Defendants portrayed the Company's disappointing earnings as merely a temporary setback.  For example, Defendant Hees stated that the Company was "confident our Q3 results show that the turnaround of our top line performance is firmly underway, not just in terms of headline organic growth but also real volume growth" and that "we are equally confident that profitability will improve going forward, as one-off negative factors from Q3 fall away. . . that are in the path to sustainable, profitable growth, and driven by the fact that we are adapting the company with speed."

9.      Despite these reassurances, on February 21, 2019, Kraft Heinz disclosed its non-cash impairment charge of $15.4 billion related to goodwill and intangible assets relating primarily to the Kraft and Oscar Mayer trademarks.  The Company further disclosed an EPS of $0.84, which was $0.10 below consensus estimates, and revenues of $50 million, also below consensus expectations.  Kraft Heinz also announced that the Company's quarterly dividend would be cut from $0.625 cents per share to $0.40 cents per share.  Finally, the Company revealed that in October 2018, it had received a subpoena from the SEC associated with "an investigation into the Company's procurement area" and "account policies, procedures and internal controls."  The following day, the price of Kraft Heinz common stock fell $13.23 per share, or approximately

4

27%, from a close of $48.18 per share on February 21, 2019, to a close of $34.95 per share on February 22, 2019.

10.　　On the heels of these disclosures, on April 22, 2019, Kraft Heinz announced the imminent departure of the Company's Chief Executive Officer, Defendant Hees, effective June 30, 2019. The Company further disclosed that Miguel Patricio ("Patricio") – currently the Chief Marketing Officer at Anheuser-Busch InBev, another 3G Capital Company – will replace Hees as Chief Executive Officer. Various news reports indicate that Kraft Heinz Chairman and Defendant 3G Capital co-founder Defendant Behring approached Patricio about the Chief Executive Officer role in early 2019

11.　　Defendants' misstatements and omissions of material facts caused the price of Kraft Heinz common stock to be artificially inflated during the Class Period. These misstatements and omissions also directly impacted the value of the subject options and futures on Kraft Heinz common stock during the Class Period.

**The Subject Derivatives Instruments**

12.　　In addition to Kraft Heinz's common stock, this action is brought on behalf of purchasers of call options, sellers of put options and purchasers of futures on Kraft Heinz common stock. Call options, put options and futures are financial derivative instruments whose value is a function of the price of the underlying security (in this case, Kraft Heinz common stock), and are subject to price fluctuation corresponding with the increase or decrease in the price of the underlying security.

13.　　A call option is a contract between a seller (the option writer) and a purchaser (the option holder), under which the call option purchaser has the right, but not the obligation, to exercise the option, and thereby purchase the underlying security at an agreed-upon price (the

"strike" or "exercise" price) from the seller by a pre-set expiration date. The call option purchaser (Plaintiff and other members of the proposed Class in this matter) will benefit if the price of the underlying security appreciates so that the option can be either: (1) resold at a price higher than the price at purchase; or (2) exercised at a strike price lower than the market price of the underlying security.

14.     A put option is a contract between a seller (the option writer) and a purchaser (the option holder), under which the put option purchaser has the right, but not the obligation, to exercise the option, and thereby sell the underlying security at an agreed-upon price. The put option seller (Plaintiff and other members of the proposed Class in this matter) is obligated to purchase the underlying security at the agreed-upon price if the option is exercised on or before the expiration date. Put option sellers generally lose value on their positions when the market price of the underlying security declines.

15.     A future is a financial contract that obligates the buyer to purchase an asset (here, Kraft Heinz common stock), at a predetermined future date and price. While similar to options, futures are distinguishable because options give the holder the *right* to buy or sell the underlying asset at expiration, while the holder of a futures contract is *obligated* to fulfill the terms of the contract.

16.     As a result of Defendants' fraudulent conduct, the price of the security underlying the call options and futures purchased, and put options sold, by Plaintiff and other members of the proposed Class — Kraft Heinz common stock — was artificially inflated during the Class Period. Therefore, the prices of Kraft Heinz call options and futures were artificially inflated during the Class Period, while the prices of Kraft Heinz put options were artificially deflated during the Class Period. Consequently, Plaintiff and other members of the Class suffered billions of dollars in

damages by trading in Kraft Heinz common stock and the subject derivatives at prices that did not reflect their true value. Through this action, Plaintiff asserts claims on behalf of itself and other similarly situated investors that purchased Kraft Heinz common stock, purchased call options on Kraft Heinz common stock, sold put options on Kraft Heinz common stock and/or purchased futures on Kraft Heinz common stock during the Class Period.

## II.    JURISDICTION AND VENUE

17.    The claims asserted herein arise under Sections 10(b), 20(a) and 20A of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. 13.

18.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

19.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). Defendant Kraft Heinz has one of its two headquarters in Chicago, Illinois, and many of the wrongful acts alleged herein occurred in this District.

## III.    PARTIES

20.    Plaintiff Timber Hill, LLC ("Timber Hill") is a Connecticut limited liability company with its principal place of business at One Pickwick Plaza, Greenwich, Connecticut 06830. As reflected in the certification attached hereto as Exhibit 1, Timber Hill purchased and sold Kraft Heinz common stock, as well as the subject options and futures on Kraft Heinz common stock, during the Class Period and suffered damages as a result of the conduct complained of

herein. Plaintiff Timber Hill also purchased Kraft Heinz common stock and futures on Kraft Heinz commons tock contemporaneously with Defendant 3G Capital's insider sales in August 2017.

21.     Defendant Kraft Heinz is a Delaware corporation formed in July 2015. Kraft Heinz's common stock is traded on the NASDAQ Global Select Market ("NASDAQ"), under the symbol KHC. Kraft Heinz has headquarters in both Chicago, Illinois and Pittsburg, Pennsylvania.

22.     Defendant Bernardo Hees ("Hees") has served as the Company's Chief Executive Officer since its formation in July 2015. Hees is also a partner at Defendant 3G Capital.

23.     Defendant David H. Knopf ("Knopf") has been the Company's CFO and Executive Vice President since October 1, 2017. Prior to this position, Knopf joined Kraft Heinz in July 2015, serving as Vice President of Finance, Head of Global Budget & Business Planning, ZBB, and Financial & Strategic Planning.

24.     Defendant Paulo Basilio ("Basilio") served as the Company's Chief Financial Officer and Executive Vice President from June 2015 until October 1, 2017.

25.     Defendant George El-Zoghbi ("El-Zoghbi") served as COO of Kraft Heinz's U.S. business until October 1, 2017. El-Zoghbi now serves as a full-time Special Advisor to the Company.

26.     Defendant Christopher R. Skinger ("Skinger") served as Kraft Heinz's Vice President Global Controller and Principal Accounting Officer until June 18, 2018.

27.     Defendant Vince Garlati ("Garlati") has served as Kraft Heinz's Vice President Global Controller and Principal Accounting Officer since June 18, 2018.

28.     Defendant Alex Behring ("Behring") has served as the Chairman of The Kraft Heinz Company board of directors since the Merger in July 2015 and previously served as

Chairman of the Heinz board from June 2013 to July 2015. Behring is the co-founder and managing partner of 3G Capital.

29.     Defendant 3G Capital is a global investment firm purportedly focused on long-term value and maximizing the potential of brands and businesses. 3G Capital maintains offices in Rio De Janeiro, Brazil and New York, New York. Three partners of 3G Capital currently serve on Kraft Heinz's Board of Directors, including Alex Behring who serves as the board Chairman.

30.     Defendants Hees, Basilio, Knopf, El-Zoghbi, Skinger, Garlati and Behring are collectively referred to hereinafter as the "Individual Defendants." By virtue of their positions as senior executives and/or members of the Kraft Heinz Board of Directors (as well as, for some, being partners of Defendant 3G Capital, one of the Company's largest shareholder), each of the Individual Defendants had control over the wrongdoing alleged herein.

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    The Formation of The Kraft Heinz Company

31.     Prior to the Merger, Kraft was a grocery company based in Chicago, Illinois. The company was previously named Kraft Foods Inc., but in 2012 was renamed Mondelez International and a portion of the company was spun off into a separate entity named Kraft Food Groups, Inc. Following the spin off, Mondelez International focused on producing and distributing snack foods worldwide, while Kraft focused on American cheese and dairy foods. Kraft produced, marketed and distributed a variety of valuable brands, including A.1., Capri Sun, Jell-O, Kool Aid, Kraft Singles, Maxwell House, Oscar Meyer, Philadelphia Cream Cheese, Planters and Velveeta. Kraft was a public company listed on the NASDAQ stock exchange.

32.     Heinz was a global food company based in Pittsburgh, Pennsylvania. Heinz manufactured and marketed packaged foods throughout the world, such as its Heinz sauces and

Ore-Ida potatoes. In February 2013, Heinz announced that it would be purchased by Berkshire Hathaway and 3G Global Food Holdings, L.P., a subsidiary of Defendant 3G Capital.

33. Defendant 3G Capital is a Brazilian-American private equity firm known for its cost cutting strategies, including "zero-based budgeting," where budgets are created from scratch each year instead of merely being updated from the previous year's budget. The firm has implemented its budgeting and cost cutting strategy at numerous former and current food-related portfolio companies, including Anheuser-Busch InBev, Burger King and Tim Hortons. As such, Defendant 3G Capital was intimately aware of the strength, and also the risks, of such a strategy. After acquiring Heinz in 2013, Defendant 3G Capital started to implement its cost cutting approach, including zero-based budgeting.

34. In early 2015, Kraft and Heinz announced they were merging to become the Kraft Heinz Company. The food giants stated that the Merger would result in "an estimated $1.5 billion in annual cost savings from the increased scale of the new organization, the sharing of best practices and cost reductions by the end of 2017." Enormous synergies were expected from utilizing Heinz's global network (prior to the merger, nearly 85% of Heinz's sales were from regions other than North America) to expand the reach of Kraft's primarily domestic brands (approximately 98% of Kraft's sales were in North America). While Mondelez had exclusive rights to sell certain Kraft brands internationally, Kraft had the right to sell some of its brands, including A.1., Velveeta, Planters, MiO and Lunchables, internationally. The Company anticipated that expanding such brands outside North America would provide a boost to the new firm's revenue growth.

35. The new combined entity, the Kraft Heinz Company, was controlled by the former owners of Heinz (*i.e.* Berkshire Hathaway and Defendant 3G Capital). Indeed, the Kraft Heinz

10

Board was composed of six members appointed by the Heinz Board, and only five members appointed by the Kraft Board.  The Heinz Board appointed three partners of Defendant 3G Capital to the new Kraft Heinz Board.  This included appointing 3G Capital cofounder, Alexandre Behring, as the Chairman of the Kraft Heinz Board.

36.     The senior executives leading the Kraft Heinz Company were also primarily former Heinz executives, including many that were affiliated with Defendant 3G Capital.  For example, Heinz's former CEO and a partner at 3G Capital, Defendant Hees, became the CEO of new combined Kraft Heinz Company.  The former CFO of Heinz, Defendant Basilio, became Executive Vice President and CFO of Kraft Heinz.  In 2017, Defendant Knopf, another partner at Defendant 3G Capital, replaced Basilio at Kraft Heinz's CFO.  Further, Pedro Drevon, a former partner at Defendant 3G Capital, became President of Kraft Heinz's Latin America Zone.

37.     Following the Merger, Heinz's former controlling shareholders, Berkshire Hathaway and Defendant 3G Capital, owned approximately 51% of the outstanding shares of Kraft Heinz common stock, with the former Kraft shareholders owning the remaining 49%.

38.     Shortly after the Merger, Defendants implemented Defendant 3G Capital's cost reduction strategy and began integrating the operations of Kraft and Heinz. These cost cutting initiatives, which included reducing marketing expenses, revamping the budgeting process and eliminating certain employee benefits, were purportedly implemented to lower costs and increase the Company's profitability.  However, at the time, Defendants knew or should have known that these cost cutting strategies would impair the value of its brands, as it would prevent the Company from innovating to keep up with consumer trends and increasing competition.

**B.      Defendants Mislead The Market About the Results of The Cost Cutting Strategy**

39.      The Class Period begins on July 6, 2015, when shares of the newly-formed Kraft Heinz began trading on the NASDAQ.  Starting on this date, Defendants misled investors concerning the business and prospects of Kraft Heinz and the value of its brands.  Defendants' false and misleading statements had the intended effect concealing from investors the true state of Kraft Heinz's business operations and financial results, and thus artificially inflated the price of Kraft Heinz common stock and impacted the value of options and futures on Kraft Heinz common stock through the remainder of the Class Period.

40.      As noted above, leading up to the Merger, Defendants estimated that the Merger would result in $1.5 billion in annual cost savings by the end of 2017.  On November 5, 2015, Kraft Heinz held an earnings call with analysts and investors to discuss the Company's first post-Merger quarterly financial results.  During the earnings call, Defendant Hees expressed optimism that realizing the expected synergies were on track, stating that the Company is "finding significant opportunities embedded in the $1.5 billion."  During this same earnings call, the Company presented a slide representing that Kraft Heinz was "[e]ffectively managing pricing and input costs" and would "[c]ontinue to deliver productivity and restructuring savings."

41.      Defendants continued to mislead investors about the Company's purported cost savings during its future earnings calls.  For example, on its February 25, 2016 earnings call, Defendant Basilio announced that the Company had "realized roughly $125 million in savings in 2015."  Similarly, on May 4, 2016, during the Company's first quarter 2016 earnings call, Defendant Hees touted that "[r]egarding the integration program, I'm also happy to report that our savings are coming faster than we were expecting roughly $225 million in Q1."  The Company's

accompanying presentation in connection with the same earnings announcement emphasized that Kraft Heinz was "[o]n pace to fully realize $1.5 billion cost savings in 2017."

42. In 2017, Defendants further misled investors about its expected cost savings. On May 3, 2017, Kraft Heinz filed a Form 8-K announcing the Company's first quarter 2017 financial results. Within the Form 8-K, Defendant Hees is quoted as stating, "[a]lthough our top line results in the first quarter reflect a slow start to the year, we remain on track with our key initiatives." Hees also stated, "[w]e are delivering product innovations, renovations, and geographic expansion that positions Kraft Heinz to drive organic sales growth for the balance of 2017 and beyond."

43. On that same day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's financial results. During the conference call, Defendant Hees stated that, "the result of our 2017 pipeline is on track." Defendant Hees further added that the Company "remain[s] on track with our cost savings initiatives." On an earnings call on November 1, 2017, Defendant Hees further confirmed with respect to its cost savings that "our plans and our progress remains on track."

44. At no point during the Class Period did Defendants disclose that they knew the expected synergies and other benefits from the Merger would not be realized. However, as would later be disclosed, Defendants knew that the extreme cost cutting strategies implemented by Defendant 3G Capital would result in reduced profitability so significant that the value of Kraft Heinz's previously most profitable brands would be significantly impaired.

## C. Defendants Mislead Investors About the Value of the Kraft Heinz Brand

45. Shortly after the Merger, Kraft Heinz began to suffer an impairment in the value of certain of its brands as revenues continued to decline in the face of consumer sentiment and the lack of new product innovation caused by its extreme cost cutting strategy.

46.     Indeed, Defendants, in implicit recognition of the Company's brand values being impaired, tried to calm investor concerns by touting purported "new product development programs."  For example, during the Company's November 3, 2016 earnings call, Defendant Basilio stated, "[b]ased on what we've already seen in the marketplace, we remain confident in our ability to drive improvements in our top-line trends in existing markets."  Similarly, on the November 3, 2017 earnings call, Defendant Hees represented that "we really believe we have a solid organic path here to create value.

47.     Likewise, during a May 2017 earnings call, Defendant Hees praised the Company's "strong pipeline" of new products with "trend-bending ability."  Defendant Hees further assured investors that the Company's recent "launches are starting to gain traction in the marketplace, and we have more to come."

48.     Defendants continued to mislead investors regarding its brand value in its 2018 SEC filings and public statements.  For example, Kraft Heinz filed its second quarter 2018 Form 10-Q, signed by Defendants Knopf and Garlati, with the SEC.  Within the second quarter 2018 Form 10-Q, the Company reported that it tests both goodwill and intangible assets for impairment at least annually in the second quarter or when a triggering event occurs.  The second quarter Form 10-Q also disclosed that Kraft Heinz had recorded only a minor "non-cash impairment loss of $101 million due to net sales and margin declines related to the Quero brand in Brazil."

**D.  3G Capital Reaps Enormous Profits by Selling Shares of Kraft Heinz Stock While in Possession of Material Nonpublic Information**

49.     Defendants' misstatements and omissions caused the price of Kraft Heinz common stock to be artificially inflated throughout the Class Period.  This artificial inflation directly impacted the value of options and futures on Kraft Heinz securities purchased and sold throughout the Class Period.  Consequently, the Class did not have the information required to be disclosed

14

under the Exchange Act and, therefore, engaged in transactions in the subject Kraft Heinz derivatives at unfair prices. Through a series of partial disclosures in 2018 and early 2019, the truth emerged regarding Kraft Heinz's business operations, financial condition and prospects. As the truth was revealed to the market, artificial inflation was removed from the prices of Kraft Heinz common stock, call options and futures, and artificial deflation was removed from the prices of Kraft Heinz put options. Consequently, Plaintiff and other investors suffered damages from Class Period purchases of Kraft Heinz common stock, call options and futures, as well as sales from put options on Kraft Heinz common stock.

50.     On February 6, 2018, Nielsen released data showing a 4-7% volume decline in Kraft Heinz's top-3 categories, cheese, meat and coffee. In addition, the data showed that sales of Kraft's Planters nuts fell approximately 15%. As a result of the disclosure of Kraft Heinz's falling sales on February 6, 2018, the Company common stock price fell $2.73 per share over the next two days, from a close of $74.31 on February 6, 2018, to a close of $71.58 on February 8, 2018.

51.     The next week, on February 16, 2018, Kraft Heinz released its 2017 annual results, and reported a decline in sales of about 1.1%, driven primarily by weak sales of nuts and cold cuts. Defendant Hees commented on the related earnings call that "there is no question that our financial results in 2017 did not meet our potential." On the poor earnings announcement on February 16, 2018, Kraft Heinz's share price dropped $4.02 per share or approximately 5.5% over the next two trading days, from a close of $72.71 per share on Thursday, February 15, 2018 to a close of $68.69 per share on Monday, February 20, 2018..

52.     While admitting the 2017 results were poor, Defendants attempted to portray the weak earnings as merely temporary setbacks. For example, Defendant Hees stated on the related earnings calls that the 2017 financial results "did not reflect our progress or potential." Defendant

15

Hees further stated that apart from several "transitory factors," "we are seeing ongoing improvement in consumption trends in most countries and in most of the key categories that we believe will drive both top and bottom-line growth into the second half of the year." Similarly, in the Form 8-K filed announcing the results, Defendant Hees was quoted as stating, "[w]e made significant improvements in many of our businesses" that "should help further advantage our brands and grow our business in 2018 and beyond

53.     Defendants further calmed investor concerns on May 2, 2018, citing on an earnings call that "Oscar Mayer cold cuts" were one of the "tangible drivers of the turnaround in the second half of 2018." Defendant Hees highlighted "the Kraft Brand" as "giving us a lot of excite[ment] behind Kraft's new offers in cheese and other segments that can be very relevant." Likewise, during the next quarter's earnings call, Defendant Hess stated that "we expect our profitability to improve by year-end, with further momentum into 2019."

54.     No later than mid-2018, Defendant 3G Capital was indisputably in possession of material nonpublic information concerning Kraft's business prospects, including the need to take a massive impairment charge, by virtue of its partners and affiliates' positions as executives and directors of Kraft Heinz. Indeed, both Defendant Hees, the soon-to-be former CEO of Kraft Heinz, and Defendant Behring, the Chairman of the Kraft Heinz Board of Directors, were partners at Defendant 3G Capital.

55.     While in possession of material nonpublic information concerning the upcoming impairment, Defendant 3G Capital sold 20.6 million shares of Kraft Heinz common stock on August 7, 2018, reaping over $1.2 billion in illicit gains.

56.     Just months later, the truth regarding Kraft Heinz's diminished value continued to be revealed. On November 1, 2018, the Company announced that its quarterly results, revealing

its EPS of $0.78 per share was short of consensus estimates by nearly 4%. The Company also disclosed that its EBITA missed analysts' consensus estimates by approximately $100 million, or 7%. In reaction to this disclosure, the price of Kraft Heinz common stock fell $5.47 per share or 9.7% in response to the poor results, from a close of $56.20 per share on November 1, 2018, to close at $50.73 per share on November 2, 2018.

57.     Despite the bad news, Defendants attempted to again portray the disappointing quarter as a "one-off" setback. Indeed, the Form 8-K Kraft Heinz filed on November 1, 2018 stated that "[w]hile a number of one-off factors . . . held back profit in the quarter, we remain confident that we are well-positioned to deliver sustainable, profitable growth going forward." Further, during the earnings call held that day, Defendants Hees assured investors that "we believe and are confident our Q3 results show that the turnaround of our top line performance is firmly underway, not just in terms of headline organic growth, but also real volume growth" and that "we are equally confident that profitability will improve going forward, as one-off negative factors from Q3 fall away . . . and I believe that are in the path to sustainable, profitable growth, and driven by the fact that we are adapting the company with speed." During the same call, Defendant Knopf responded to analysts concerns over inconsistent results stating, "for 2019, we do expect a much better balance of top- and bottom line growth going forward [and] [i]n 2018, we've had a number of transitory issues that we don't expect to repeat."

58.     The next day, November 2, 2018, Kraft Heinz filed its third quarter Form 10-Q, signed by Defendants Knopf and Garlati, which stated, "[n]o events occurred during the period ended September 29, 2018 that indicated it was more likely than not that our goodwill was impaired."

17

59.     Despite Defendants' characterization of the problems as mere temporary setbacks, the true extent of Kraft Heinz's problems was further revealed on February 21, 2019, when the Company announced it was required to take a $15.4 billion non-cash impairment charge related to the goodwill and intangible assets driven "primarily [by] the Kraft and Oscar Mayer trademarks" and due "primarily [to] U.S. Refrigerated and Canada Retail."   In addition to the massive impairment, the Company also reported that its EPS of $0.84, which was $0.10 below consensus estimates, as well as revenues $50 million below consensus expectations.   In addition, the Company announced it was lowering its quarterly dividend from $0.625 cents per share to $0.40 cents per share.

60.     On the same day, the Company disclosed that in October 2018 it received a subpoena from the SEC in connection with "an investigation into the Company's procurement area, more specifically the Company's accounting policies, procedures, and internal controls related to its procurement function, including, but not limited to, agreements, side agreements, and changes or modifications to its agreements with its vendors." As a result, the Company stated it recorded a $25 million increase to costs of goods sold ("COGS") due to its misstatement of previous COGS figures.

61.     Following the disclosure of the impairment, missed earnings, reduced dividend and SEC investigation, the price of Kraft Heinz common stock fell $13.23 per share or nearly 28%, from a close of $48.18 per share on February 21, 2019, to a close of $34.95 per share on February 22, 2019.

62.     The disclosures detailed above revealed the truth regarding Defendants' representations to investors.   As the truth was revealed to the market, artificial inflation was removed from the prices of Kraft Heinz common stock, call options and futures, and artificial

18

deflation was removed from the prices of Kraft Heinz put options. Consequently, Plaintiff and other equity and derivatives investors suffered damages on from Class Period transactions on Kraft Heinz common stock and derivatives on Kraft Heinz common stock.

63. Notably, on April 22, 2019, Kraft Heinz announced that Defendant Hees is stepping down as the Company's Chief Executive Officer effective June 30, 2019.

## VI. FALSE AND MISLEADING STATEMENTS

### A. Kraft Heinz's Class Period SEC Filings Were Materially False and Misleading and Omitted Material Facts in Violation of SEC Disclosure Regulations

64. Item 8 of Form 10-K and Item 1 of Form 10-Q, via reference to Regulation S-X , 17 C.F.R. §210, required Kraft Heinz to file with the SEC financial statements prepared in conformity with Generally Accepted Accounting Principles ("GAAP") during the Class Period. Regulation S-X, 17 C.F.R. §210.4-01 (a)(1), states, among other things, that financial statements filed with the SEC that are not prepared in conformity with GAAP are *presumed* to be misleading and inaccurate.

65. During the Class Period, the financial statements Kraft Heinz issued to investors and filed with the SEC on Forms 10-K and 10-Q improperly accounted for COGS and intangible asset impairments, including goodwill, were materially misstated, and presented in violation of GAAP. Indeed, this improper accounting impacted significant portions of each Form 10-K and Form 10-Q the Company filed during the Class Period, including the Company's reported net income and earnings per share figures announced in press releases, Forms 8-K and during earnings calls.

66. The statements in the Company's Forms 10-K and 10-Q filed during the Class Period were false and misleading when made. Contrary to Defendants' statements, they knew, or

were reckless in not knowing, that Kraft Heinz's brands were overvalued and as a result the financial statements included in each of the Company's quarterly and annual report was false and misleading.  In addition, each of the Company's Forms 10-K and 10-Q omitted material facts concerning the Company's accounting practices.

67.     Item 7 of Form 10-K and Item 2 of Form 10-Q required Kraft Heinz to furnish the information called for under Item 303 of Regulation S-K, 17 C.F.R. §229.303, Management's Discussion and Analysis of Financial Condition and Results of Operations ("MD&A") during the Class Period.  The MD&A in the Company's Forms 10-K and 10-Q were false and misleading when filed with the SEC.  Indeed, the MD&As contained materially false and misleading disclosures about the Company's operating performance and failed to disclose material events and issues associated with Kraft Heinz's major brands and internal control weaknesses.  As alleged herein, these items were known to management at the time the Forms 10-K and 10-Qs were filed, and were reasonably likely to have a material effect on the Company's future operating results.

68.     Item 1A of Forms 10-K and 10-Q required Kraft Heinz to furnish the information called for under Item 503 of Regulation S-K, 17 C.F.R. §229.503, Risk Factors. Item 503 of Regulation S-K required Kraft Heinz to disclose the most significant matters making an investment in the Company risky.  The Forms 10-K and 10-Q Kraft Heinz filed with the SEC during the Class Period failed to disclose material risks associated with its major brands and material internal control weaknesses that made an investment in the Company risky.  These Forms 10-K and 10-Q were false and misleading when made, as Defendants' knew, or were reckless in not knowing, that Kraft Heinz's brands were already overvalued and would soon recognize a significant goodwill impairment.

20

69.     Item 9A of Form 10-K and Item 4 of Form 10-Q required the Company to furnish the information called for under Item 307 of Regulation S-K, 17 C.F.R. §229.307, Disclosure Controls and Procedures, and Item 308 of Regulation S-K, 17 C.F.R. §229.308, Internal Control over Financial Reporting, during the Class Period.  Similarly, Item 307 of Regulation S-K required Kraft Heinz's Forms 10-K and 10-Q during the Class Period to disclose the conclusions of Defendants Hees, Basilio, and Knopf regarding the effectiveness of Kraft Heinz's disclosure controls and procedures, defined by relevant regulation as the controls and procedures designed to ensure that information required to be disclosed in reports filed with the SEC is appropriately recorded, processed, summarized, and reported.  During the Class Period, Kraft Heinz falsely and misleadingly represented in its Forms 10-K and 10-Q filed with the SEC that its disclosure controls were operating effectively when, as the Company has now admitted through is $15 billion write-down, they were not.   During the Class Period, these materially false and misleading representations were certified by Defendants Hees, Basilio, and Knopf.

70.     Item 308 of Regulation S-K required the Company's Forms 10-K and 10-Q during the Class Period to disclose, among other things, the conclusions of Defendants Hees, Basilio, and/or Knopf regarding the effectiveness of Kraft Heinz's internal controls over financial reporting.  During the Class Period, Kraft Heinz's Forms 10-K and 10-Q were false and misleading when filed, as the Company's internal controls over financial reporting were operating effectively when, as the Company has now admitted, it operated with material weaknesses.  These materially false and misleading representations were certified by Defendants Hees, Basilio, and/or Knopf during the Class Period.

**B.     Additional False and Misleading Statements During the Class Period**

71.     In addition to the Company's Forms 10-K and 10-Qs filed during the Class Period, Defendants made additional false and misleading statements and omissions of material facts in press releases, Forms 8-K and during Company earnings calls.  On November 5, 2015, during an earnings call with analysts and investors to discuss the Company's first post-Merger quarterly financial results, Defendant Hees expressed optimism that realizing the expected synergies were on track, stating that the Company is "finding significant opportunities embedded in the $1.5 billion."  During this same earnings call, the Company presented a slide representing that Kraft Heinz was "[e]ffectively managing pricing and input costs" and would "[c]ontinue to deliver productivity and restructuring savings."

72.     The statements Defendants issued on November 5, 2015 were false and misleading when made.  Contrary to Defendants' statements, they knew, or were reckless in not knowing, that the expected synergies from the Merger would not be realized and the Company's cost cutting initiatives were undermining its product innovation, and, as a result, the value of Kraft Heinz's brands was significantly impaired.

73.     On Kraft Heinz's February 25, 2016 earnings call, Defendant Basilio announced that the Company had "realized roughly $125 million in savings in 2015."

74.     The statements Defendants issued on February 25, 2016 were false and misleading when made.  Contrary to Defendants' statements, they knew, or were reckless in not knowing, that the expected synergies from the Merger would not be realized and the Company's cost cutting initiatives were undermining its product innovation, and, as a result, the value of Kraft Heinz's brands was significantly impaired.

75.     On May 4, 2016, during the Company's first quarter 2016 earnings call, Defendant Hees stated that "[r]egarding the integration program, I'm also happy to report that our savings are coming faster than we were expecting roughly $225 million in Q1."   The Company's accompanying presentation in connection with the same earnings announcement emphasized that Kraft Heinz was "[o]n pace to fully realize $1.5 billion cost savings in 2017."

76.     The statements Defendants issued on May 4, 2016 were false and misleading when made.  Contrary to Defendants' statements, they knew, or were reckless in not knowing, that the expected synergies from the Merger would not be realized and the Company's cost cutting initiatives were undermining its product innovation, and, as a result, the value of Kraft Heinz's brands was significantly impaired.

77.     On the Company's November 3, 2016 earnings call, Defendant Basilio stated, "[b]ased on what we've already seen in the marketplace, we remain confident in our ability to drive improvements in our top-line trends in existing markets."  On the same call, Defendant Hees stated that "we really believe we have a solid organic path here to create value."

78.     The statements Defendants issued on November 3, 2016 were false and misleading when made.  Contrary to Defendants' statements, they knew, or were reckless in not knowing, that the expected synergies from the Merger would not be realized and the Company's cost cutting initiatives were undermining its product innovation, and, as a result, the value of Kraft Heinz's brands was significantly impaired.

79.     On May 3, 2017, Kraft Heinz filed a Form 8-K announcing the Company's first quarter 2017 financial results, stating that, "[a]lthough our top line results in the first quarter reflect a slow start to the year, we remain on track with our key initiatives."   In the press release, Defendant Hees stated, "[w]e are delivering product innovations, renovations, and geographic

expansion that positions Kraft Heinz to drive organic sales growth for the balance of 2017 and beyond." Later that same day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's financial results, where Defendant Hees stated that, "the result of our 2017 pipeline is on track." Defendant Hees further added, "we remain on track with our cost savings initiatives."

80.     The statements Defendants issued on May 3, 2017 were false and misleading when made. Contrary to Defendants' statements, they knew, or were reckless in not knowing, that the expected synergies from the Merger would not be realized and the Company's cost cutting initiatives were undermining its product innovations, and, as a result, the value of Kraft Heinz's brands was significantly impaired.

81.     On February 16, 2018, Kraft Heinz filed a Form 8-K with the SEC, wherein Defendant Hees stated, "[w]e made significant improvements in many of our businesses" that "should help further advantage our brands and grow our business in 2018 and beyond."

82.     While the truth was partially revealed on February 16, 2018, the statements Defendants issued on February 16, 2018 were false and misleading when made because, contrary to Defendants' statements, they knew, or were reckless in not knowing that the expected synergies from the Merger would not be realized and the Company's cost cutting initiatives were undermining its product innovations, and, as a result, the value of Kraft Heinz's brands was significantly impaired.

83.     On May 2, 2018, Kraft Heinz filed a Form 8-K, quoting Defendant Hees stating, "[t]he initial successes we're seeing in the marketplace, together with the strong investments we're making in marketing, new product innovation, and capability building, give us increased confidence in delivering the top- and bottom-line growth we expect in 2018." On the same day,

during the Company's earnings call Defendant Hees stated that apart from several "transitory factors," "we are seeing ongoing improvement in consumption trends in most countries and in most of the key categories that we believe will drive both top and bottom-line growth into the second half of the year." On the same earnings call, Defendant Knopf listed "Oscar Mayer cold cuts" as one of the "tangible drivers of the turnaround in the second half of 2018." Defendant Hees further highlighted "the Kraft Brand" as "giving us a lot of excite[ment] behind Kraft's new offers in cheese and other segments that can be very relevant."

84. The statements Defendants issued on May 2, 2018 were false and misleading when made. Contrary to Defendants' statements, they knew, or were reckless in not knowing, that the expected synergies from the Merger would not be realized and the Company's cost cutting initiatives were undermining its product innovations, and, as a result, the value of Kraft Heinz's brands was significantly impaired.

85. On November 1, 2018, during an earnings call, Defendants Hees stated that "we believe and are confident our Q3 results show that the turnaround of our top line performance is firmly underway, not just in terms of headline organic growth, but also real volume growth" and that "we are equally confident that profitability will improve going forward, as one-off negative factors from Q3 fall away . . . and I believe that are in the path to sustainable, profitable growth, and driven by the fact that we are adapting the company with speed." During the same conference call, Defendant Knopf responded to analysts concerns over inconsistent results stating, "for 2019, we do expect a much better balance of top- and bottom line growth going forward [and] [i]n 2018, we've had a number of transitory issues that we don't expect to repeat."

86. The statements Defendants issued on November 1, 2018, while partially revealing the truth about the Company's deteriorating prospects, were false and misleading when made.

25

Contrary to Defendants' statements, they knew, or were reckless in not knowing that the missed earnings were not a "one off" setback, and that the value of Kraft Heinz's brands was significantly impaired.

## V.    ADDITIONAL SCIENTER ALLEGATIONS

87.    During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants: (i) knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; (ii) knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

88.    The Individual Defendants permitted Kraft Heinz to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's stock and impacted the value of the subject options and futures on Kraft Heinz common stock.

89.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Kraft Heinz, their control over, receipt, and/or modification of Kraft Heinz's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Kraft Heinz, participated in the fraudulent scheme alleged herein.

90.    The Individual Defendants Hees, Basilio, and Knopf who, as executive officers of the Company, knew or recklessly ignored facts related to the core operations of Kraft Heinz, which can be imputed to Kraft Heinz.

91.     Defendant 3G Capital's insider sales also support scienter.  Academic studies regarding the relationship between insider trading and goodwill impairments are consistent with the alleged fraudulent intent here and provide evidence, based upon a comparison of firms that record goodwill impairments and firms that do not take impairment charges, that officers have private information regarding eventual goodwill impairments and trade on that information prior to taking a write-down.  These statistical studies have found a considerable, abnormal selling of shares by corporate insiders in the two years preceding the formal announcement of goodwill impairments, and that insiders generally distance their trades by approximately six months prior to the impairments' formal announcement.

92.     According to academic studies, corporate officers and directors face incentives to behave strategically with respect to their trades.  As with the sales by Defendant 3G capital – who sold shares approximately six months before the February 2019 disclosure of Kraft Heinz's $15 billion write-down – studies have shown that stock sales by insiders increase three to nine quarters prior to a break in a string of consecutive quarterly earnings increases.  Because SFAS 142 requires annual impairment testing, insiders may obtain private information about future impairments at least one year before the actual loss is publicly reported. The results of researchers' tests are consistent with insiders possessing private information regarding goodwill impairments, and suggest that even despite high visibility and attendant high litigation risk associated with goodwill impairments, officers sell their shares strategically in advance of reporting the impairment. The results of these studies suggest that officers distance their sales from the impairment announcement to minimize the latter litigation risk.

93.     Consistent with these findings, in August 2018 Defendant 3G Capital sold more than $1.2 billion of Kraft Heinz common stock at an artificially inflated price.  This sale occurred

approximately six months before Kraft Heinz's February 21, 2017 concession that the Company would take a significant goodwill write-down, which is consistent with the insider sales pattern identified in academic studies.

94.     On April 22, 2019, Kraft Heinz announced that Defendant Hees is stepping down as the Company's Chief Executive Officer effective June 30, 2019.  The departure of senior executives involved in the alleged wrongdoing is evidence of scienter.

95.     Finally, scienter is established by the massive size of the goodwill impairment itself, when just months earlier, the Company had supposedly conducted an impairment analysis and found only a minimal material impairment of its assets.  No reasonable inference can support any assertion by the Defendants that there was no impairment and then within a matter of months, much of the value of the entire Kraft Heinz business was deemed to be worthless.

96.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding the Company's financial prospects, and the intrinsic value of Kraft Heinz common stock, and caused Plaintiff and members of the Class to suffer damages.

## VI.   CLASS ACTION ALLEGATIONS

97.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf individuals or entities who purchased or otherwise acquired Kraft Heinz common stock, purchased call options on Kraft Heinz common stock, sold put options on Kraft Heinz common stock and/or purchased futures on Kraft Heinz common stock during the Class Period, and were damaged thereby.  Excluded from the Class are Defendants herein; members of the immediate families of each of the Defendants; any person, firm, trust, corporation, officer,

director or other individual or entity in which any of the Defendants has a controlling interest or which is related to or affiliated with any the Defendants; and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

98.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number at least in the hundreds, if not the thousands, and that they are geographically dispersed.

99.     There are questions of law and fact that are common to the Class, including:

(a) whether Defendants misrepresented material facts;

(b) whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(c)  whether the prices of Kraft Heinz common stock was artificially inflated during the Class Period;

(e)  whether the prices of call options and futures on Kraft Heinz common stock were artificially inflated, and whether the prices of put options on Kraft Heinz common stock were artificially deflated during the Class Period;

(f) whether 3G Capital and the Individual Defendants are liable as "controlling persons" under §20(a) of the Exchange Act;

(g) whether 3G Capital possessed material nonpublic information as of the time of its August 2018 sales of the Company's common stock;

(h) whether plaintiff and the other members of the Class were injured as a result of Defendants' misconduct.

100.     Plaintiff's claims are typical of the claims of the other members of the Class, and plaintiff is not subject to any atypical claims or defenses.

101.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff has the same interests as the other

29

members of the Class. Accordingly, Plaintiff is adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

102. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VII. LOSS CAUSATION

103. Defendants' materially false or misleading statements and omissions of material fact, as alleged above, caused Kraft Heinz common stock to trade at artificially inflated prices and directly impacted the value of options on Kraft Heinz common stock during the Class Period.

104. For example, as alleged above, on February 6, 2018, Nielsen data showed a 4-7% volume decline in Kraft Heinz's top-3 categories (cheese, meat and coffee). In addition, data showed that sales of Kraft's Planters nuts fell by approximately 15%. As a result of the disclosure, the Company's common stock price fell $2.73 per share over the next two days, from a close of $74.31 on February 6, 2018 to a close of $71.58 on February 8, 2018.

105. Second, on February 16, 2018, Kraft Heinz released its 2017 annual results, and reported a decline in sales of about 1.1%, driven primarily by weak sales of nuts and cold cuts. Defendant Hees commented on the related earnings call that "there is no question that our financial results in 2017 did not meet our potential." On this announcement, Kraft Heinz's share price dropped over the next two trading days $4.02 per share, or approximately 5.5%, from a close of $72.71 per share on Thursday, February 15, 2018 to a close of $68.69 per share on Monday, February 20, 2018.

106. Third, on November 1, 2018, Defendants announced that the Company's EPS of $0.78 per share fell short of consensus estimates by nearly 4%, while its EBITA missed analysts' consensus estimates by approximately $100 million, or 7%. In response to this news, Kraft Heinz's

stock price declined $5.47 per share, or 9.7%, from a close of $56.20 per share on November 1, 2018, to close at $50.73 per share on November 2, 2018, removing the artificial inflation of Kraft Heinz common stock, and impacting the value of options on Kraft Heinz common stock.

107. Fourth, on February 21, 2019, Defendants disclosed that the Company recorded non-cash impairment charges of $15.4 billion related to goodwill and intangible assets driven primarily by the Kraft and Oscar Mayer trademarks, as well as the U.S. Refrigerated and Canada Retail. Additionally, the Company disclosed that it received a subpoena from the SEC in October 2018, associated with its investigation into Kraft Heinz's accounting policies, procedures, and internal controls over financial reporting and that the Company had been operating material weaknesses in its system of internal controls over financial reporting. As a result of this news, the price of Kraft Heinz common stock declined approximately 27.5%, from $48.18 per share on February 21, 2019 to $34.95 per share on February 22, 2019.

108. As the truth was revealed to the market, artificial inflation was removed from the prices of Kraft Heinz common stock, call options and futures, and artificial deflation was removed from the prices of Kraft Heinz put options. Consequently, Plaintiff and other equity and derivatives purchasers and sellers suffered damages on from their Class Period transactions.

## VIII. APPLICABILITY OF FRAUD-ON-THE-MARKET DOCTRINE

109. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

    a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b. The omissions and misrepresentations were material;

    c. Kraft Heinz's common stock traded in an efficient market;

31

      d.    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Kraft Heinz securities; and

110. At all relevant times, the market for Kraft Heinz common stock was efficient because, among other things: (i) as a regulated issuer, Kraft Heinz filed periodic public reports with the SEC; and (ii) Kraft Heinz regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## IX.    PRESUMPTION OF RELIANCE

111. At all relevant times, the market for Kraft Heinz common stock and derivatives on Kraft Heinz common stock was efficient. Indeed, Plaintiff's demonstration of the market efficiency of the underlying security – Kraft Heinz common stock – is sufficient to entitle it to rely on the fraud-on-the market theory for options and futures on Kraft Heinz common stock. The market for Kraft Heinz common stock was efficient for the following reasons, among others:

(a) Kraft Heinz's securities met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Kraft Heinz filed periodic reports with the SEC;

(c) Kraft Heinz regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Kraft Heinz was followed by numerous securities analysts employed by major brokerage firms who wrote reports which were distributed to those brokerage firms' sales force and certain customers. Each of these reports was publicly available and entered the public market place.

112. As a result of the foregoing, the market for Kraft Heinz's securities promptly reacted to current information regarding Kraft Heinz from all publicly available sources and

reflected such information in the trading prices of Kraft Heinz common stock. Under these circumstances, all purchasers of Kraft Heinz common stock, purchasers of call options on Kraft Heinz common stock, sellers of put options on Kraft Heinz common stock and purchasers of futures on Kraft Heinz common stock suffered similar injuries through their transactions in these securities. Plaintiff is thus entitled to a presumption of reliance.

113. A Class-wide presumption of reliance is also appropriate in this action under the United States Supreme Court holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact for which there is a duty to disclose.

## X. INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE

114. The statutory safe harbor or bespeaks caution doctrine applicable to forward-looking statements under certain circumstances does not apply to any of the false and misleading statements pleaded in this Complaint. None of the statements complained of herein was a forward-looking statement. Rather, they were historical statements or statements of purportedly current facts and conditions at the time the statements were made, including statements about Kraft Heinz's business prospects and internal controls.

115. To the extent that any of the false and misleading statements alleged herein can be construed as forward-looking, those statements were not accompanied by meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the statements. As set forth above in detail, then-existing facts contradicted Defendants' statements regarding Kraft Heinz's operations, prospects and controls, among others. Given the then-existing facts contradicting Defendants' statements, any generalized risk disclosures made by

Kraft Heinz were not sufficient to insulate Defendants from liability for their materially false and misleading statements.

116.     To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those statements was made, the particular speaker knew that the particular forward-looking statement was false, and the false forward-looking statement was authorized and approved by an executive officer of Kraft Heinz who knew that the statement was false when made.

## XI.     CLAIMS FOR RELIEF

**COUNT I**
**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5 against Kraft Heinz and the Individual Defendants**

117.     Plaintiff repeats, incorporates and realleges each and every allegation contained above as if fully set forth herein.

118.     This claim is brought by Plaintiff against Kraft Heinz and the Individual Defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

119.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or recklessly disregarded were misleading in that they misrepresented or omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

120.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and other Class members related to the purchase and/or acquisition and sale of Kraft Heinz derivatives.

121.    In addition to the duties of full disclosure imposed on the Defendants attendant to their affirmative false and misleading statements to the public, Defendants had a duty under SEC Regulations S-X (17 C.F.R. §210.01, et seq.) and S-K (17 C.F.R. §229.10, et seq.) to promptly disseminate truthful information with respect to Kraft Heinz operations and performance that would be material to investors in compliance with the integrated disclosure provisions of the SEC, including with respect to the Company's revenue and earnings trends, so that the market prices of the Company's securities would be based on truthful, complete, and accurate information.

122.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff and other members of the proposed Class suffered damages in connection with their purchases of Kraft Heinz common stock, purchases of call options on Kraft Heinz common stock, sales of put options on Kraft Heinz common stock, and purchases of futures on Kraft Heinz common stock during the Class Period.  In reliance on the integrity of the market, Plaintiff traded in the subject securities and experienced losses when the artificial inflation was removed from the price of Kraft Heinz common stock as a result of the revelations.  Plaintiff would not have purchased or sold the relevant Kraft Heinz securities at the prices it paid, or at all, if it had been aware of Defendants' false and misleading statements and omissions.

123.    By virtue of the conduct alleged herein, Defendants named in this Count have each violated 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5), and are liable to Plaintiff and other members of the proposed Class.

## COUNT II
### Violation of Section 20(a) of the Exchange Act against the Individual Defendants and 3G Capital

124.     Plaintiff repeats, incorporates and realleges each and every allegation set forth above (other than disclaimers of fraud claims) as if fully set forth herein.

125.     As alleged above, Defendants each violated Section 10(b) and Rule 10b-5 thereunder by their acts and omissions as alleged in this Complaint.

126.     Defendant 3G Capital and the Individual Defendants acted as controlling persons of Kraft Heinz within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control the materially false and misleading public statements about Kraft Heinz during the Class Period, Defendant 3G Capital and the Individual Defendants had the power and ability to control the actions of Kraft Heinz and its employees.  By reason of such conduct, Defendant 3G Capital and the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## COUNT III
### For Violations Of Section 20A Of The Exchange Act Against 3G Capital

127.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.  As set forth in the paragraphs above, and as further set forth below, Defendant 3G Capital committed underlying violations of Section 10(b) and Rule 10b-5 thereunder by selling Kraft Heinz common stock while in possession of material nonpublic information about, among other things, the Company's upcoming write-down, and, consequently, is liable to contemporaneous purchasers of that stock under Section 20A of the Exchange Act.  *See*

15 U.S.C § 78t-1(a). Defendant 3G Capital is also liable to contemporaneous purchasers of call options on Kraft Heinz common stock, sellers of put options on Kraft Heinz common stock and purchasers of futures on Kraft Heinz common stock, because the market for these instruments is interconnected to the market for Kraft Heinz common stock.

128. Defendant 3G Capital, through its designees to Kraft Heinz's senior manager and Board of Directors, and through direct communications from Kraft Heinz and the Individual Defendants, possessed material nonpublic information at the time they sold shares over 20.6 million shares of Kraft Heinz common stock on August 7, 2018.

129. Material nonpublic information known to 3G Capital at the time of its Kraft Heinz common stock sales included, among other things, that the Company would soon incur a massive write-down, leading to missed earnings, a reduced dividend and delayed annual report. Defendant 3G Capital did not contact the SEC on these matters or disclose these material nonpublic facts to investors. Nor did 3G Capital, as it should have, direct the Company to do so.

130. Simply put, Defendant 3G Capital possessed material nonpublic knowledge about Kraft Heinz's operations, accounting and business prospects, and knew or recklessly disregarded it would cause the Company's share price to fall when publicly disclosed, and unloaded a significant portion of its holdings at inflated prices before the nonpublic information was revealed. In fact, by selling over 20.6 million shares of Kraft Heinz common stock at a price of $59.85 per share, Defendant 3G Capital received over $1.2 billion in proceeds, avoiding millions of dollars in losses.

131. Due to 3G Capital's conduct in selling shares while in possession of material nonpublic information, which is a violation of Section 10(b) and Rule 10b-5 thereunder, 3G Capital is also liable under Section 20A of the Exchange Act.

132.     Contemporaneously with the 3G Capital's sales on August 7, 2018, Plaintiff Timber Hill purchased shares of Kraft Heinz common stock and futures on Kraft Heinz common stock.  Upon information and belief, thousands of other Class members also purchased Kraft Heinz common stock or derivatives with markets interconnected to the market for Kraft Heinz common stock contemporaneously with 3G Capital's August 7, 2018 sales.  As alleged in this Complaint, at the time of the 3G Capital's sales and the purchases by Plaintiff Timber Hill and the other Class members, the price of Kraft Heinz's common stock was artificially inflated by the Kraft Heinz Defendants' material misstatements and omissions of material facts.

133.     Section 20A of the Exchange Act provides that "[a]ny person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material nonpublic information shall be liable in an action . . . to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class."

134.     As set forth above, Defendant 3G Capital committed underlying violations Section 10(b) and Rule 10b-5 thereunder, by its acts and omissions as alleged in this Complaint. Specifically, 3G Capital violated Section 10(b) and Rule 10b-5 thereunder by selling Kraft Heinz common stock while in possession of material nonpublic information.  Consequently, 3G Capital is liable pursuant to Section 20A of the Exchange Act to Plaintiff and any other Class member that purchased the subject common stock or derivatives contemporaneously with 3G Capital's sale on or about August 7, 2018.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a class representative and Plaintiff's Counsel as class counsel under Rule 23;

B.    Awarding compensatory damages and equitable relief in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and other members of the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

135.    Plaintiff hereby demands a trial by jury.

Dated: April 25, 2019                    Respectfully submitted,


                                         */s/ Andrew J. Entwistle*
                                         Andrew J. Entwistle (Ill. Bar No. 6273699)
                                         **ENTWISTLE & CAPPUCCI LLP**
                                         500 W. 2nd Street, Suite 1900-16
                                         Austin, Texas 78701
                                         Telephone: (512) 710-5960
                                         Email: aentwistle@entwistle-law.com

                                         -and-

39

299 Park Avenue, 20th Floor
New York, New York 10171
Telephone: (212) 894-7200

Robert N. Cappucci (*pro hac vice* application forthcoming)
Sean M. Riegert (*pro hac vice* application forthcoming)
Andrew M. Sher (*pro hac vice* application forthcoming)
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, New York 10171
Telephone: (212) 894-7200

Michael H. Moirano
**MOIRANO GORMAN KENNY, LLC**
135 S. LaSalle St., Suite 2200
Chicago, Illinois 60603
Telephone: (312) 614-1260
mmoirano@mgklaw.com

*Counsel for Plaintiff Timber Hill LLC*